**GORLICK, KRAVITZ & LISTHAUS, P.C.**
Bruce L. Listhaus
Joy K. Mele
17 State Street, 4th Floor
New York, New York 10004
blisthaus@gkllaw.com
jmele@gkllaw.com
(212) 269-2500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

BUFFALO LABORERS WELFARE FUND; BUFFALO  :
LABORERS PENSION FUND; BUFFALO LABORERS  :
TRAINING FUND; BUFFALO LABORERS  :
SECURITY FUND; THOMAS L. PANEK, in his  :
fiduciary capacity as ADMINISTRATOR; LABORERS  :
EMPLOYERS COOPERATION AND EDUCATION  :
TRUST; and LABORERS' LOCAL 210,  :
INTERNATIONAL UNION OF NORTH AMERICA,  :     **COMPLAINT**
   :
   :
Plaintiffs,  :
   :
   :
- against -  :
   :
   :
SPECTRUM MECHANICAL SERVICES  :
   :
Defendant.  :

---------------------------------------------------------------------X

Plaintiffs BUFFALO LABORERS WELFARE FUND; BUFFALO LABORERS

PENSION FUND; BUFFALO LABORERS TRAINING FUND; BUFFALO LABORERS

SECURITY FUND; THOMAS L. PANEK, in his fiduciary capacity as ADMINISTRATOR

(collectively "Funds"); LABORERS EMPLOYERS COOPERATION AND EDUCATION

TRUST ("LECET"); and LABORERS' LOCAL 210, INTERNATIONAL UNION OF NORTH

AMERICA ("Union") (collectively "Plaintiffs"), by and through their attorneys, GORLICK,

KRAVITZ & LISTHAUS, P.C., as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.     This is a civil action brought pursuant to, *inter alia*, Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145 by the Funds, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, by the Union for breach of contract, injunctive relief, and for other equitable relief under ERISA.

2.     This Complaint alleges that by failing, refusing, or neglecting to comply with specific statutory and contractual obligations, Defendant Spectrum Mechanical Services ("Spectrum") violated its collective bargaining agreement obligations, the Funds' respective trust agreements, the LMRA, and ERISA.

3.     Jurisdiction of this Court is invoked under the following statutes:

   a.     ERISA § 502(e)(1) and (f) (29 U.S.C. § 1132(e)(1) and (f));

   b.     LMRA § 301 (29 U.S.C. § 185);

   c.     28 U.S.C. § 1331 (federal question);

   d.     28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

   e.     28 U.S.C. § 1367 (supplemental jurisdiction).

4.     Venue properly lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301 of the LMRA, 29 U.S.C. § 185(c) because the Funds and the Union are administered in this district, the contractual breaches took place in this district and Spectrum resides and/or may be found in this district.  Service of process may be made on Spectrum in any other district in which it may be found pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)).

## PARTIES

5.     The Funds and LECET are jointly administered, multi-employer, labor

2

management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Sections 302(c)(5), (c) (6) and (c)(9) of the LMRA, 29 U.S.C. §§ 186(c)(5), (c)(6) and (c)(9).  The Funds are authorized to collect contributions due to the LECET.

6.      The Funds also are employee benefit plans within the meaning of Sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(1)-(3), and 1132(d)(1), and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37) and 1145. The Funds are authorized to maintain suits as independent legal entities under Section 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1).

7.      The Funds provide welfare, retirement, and related benefits to eligible employees on whose behalf employers in the construction industry contribute to the Funds pursuant to collective bargaining agreements between the employers and the Union.

8.      The Funds are third-party beneficiaries to such collective bargaining agreements.

9.      The Funds maintain their offices and are administered at 25 Tyrol Drive, Suite 200, Cheektowaga, New York 14227.

10.     Thomas L. Panek ("Panek"), as Administrator of the Funds is a fiduciary of the Funds within the meaning of ERISA §§ 3(21) and 502 (29 U.S.C. §§ 1002(21) and 1132), and brings this action in his fiduciary capacity on behalf of the Funds.

11.     The Union is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined by Section 501 of the LMRA, 29 U.S.C. § 142 and Section 3(4) of ERISA, 29 U.S.C. § 1002(4).

12.     The Union is the authorized agent of the New York Laborers' Political Action Committee ("NYLPAC") and, as such, collects the NYLPAC contributions deducted from employees' pay and forwards them to NYLPAC.

13.     The Union maintains its offices and is administered at 25 Tyrol Drive, Cheektowaga, New York 14227.

14.     Defendant Spectrum is a for-profit domestic limited liability company doing business in the State of New York as an employer within the meaning of Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and is an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185. Upon information and belief, Spectrum's principal office is located at 295 Main St, Suite 964, Buffalo, NY 14203.

## BACKGROUND FACTS

15.     On or about February 9, 2018, Spectrum entered into a collective bargaining agreement with the Union, effective February 9, 2018, concerning work performed by Spectrum employees at the job site located at 500 Pearl Street, Buffalo, New York ("Agreement").

16.     The Agreement provides that it will remain in full force and effect for the duration of Spectrum's work at 500 Pearl Street, Buffalo, New York (the "Pearl Street Project").

17.     Among other things, the Agreement requires Spectrum to, *inter alia*: (i) submit to the Funds reports detailing the number of hours that Spectrum employees perform work within the trade and geographic jurisdictions of the Agreement ("Covered Work"); (ii) make fringe benefit contributions to the Funds and the LECET based on the number of hours of Covered Work its employees perform; (iii) deduct dues checkoffs and NYLPAC contributions from the wages of employees who perform Covered Work and authorize such deductions; (iv) remit all deducted dues checkoffs and NYLPAC contributions to the Union; (v) permit the Funds and/or their designated representatives to audit its books and records; (vi) post and maintain a bond to ensure payment of contributions and remittance of dues check-offs; and (vii) apply interest and other fees and costs on delinquent fringe benefit contributions.

18.     Based upon Remittance Agreements and Reports ("Remittance Reports") submitted by Spectrum for the period of February 9, 2018 through June 10, 2018 ("Remittance Delinquency Period"), Spectrum has failed to make contractually due fringe benefit contributions, LECET contributions, dues checkoffs, and NYLPAC contributions for 2,905.5 hours of Covered Work performed on the Pearl Street Project in the minimum principal amount of $76,680.11.

19.     By correspondence dated May 15, 2018, the Funds demanded full and immediate payment of all unpaid amounts owed based on the Remittance Reports.

20.     To date, Spectrum has not paid the amounts due.

21.     Upon information and belief, Spectrum continues to perform Covered Work on the Pearl Street Project.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(CLAIM FOR BREACH OF CONTRACT FOR DELINQUENT FRINGE
BENEFIT AND LECET CONTRIBUTIONS FOR THE PERIOD OF
FEBRUARY 9, 2018 THROUGH JUNE 10, 2018)**

22.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 21 of this Complaint, as if fully set forth herein.

23.     Pursuant to the Agreement, Spectrum must make fringe benefit and LECET contributions to the Funds for each hour of Covered Work performed by Spectrum employees working on the Pearl Street Project as set forth in Article X of the Agreement.

24.     Spectrum failed to make contractually mandated fringe benefit and LECET contributions for 2,905.5 hours of Covered Work performed by its individual employees on the Pearl Street Project for the Remittance Delinquency Period, resulting in principal fringe benefit and LECET contributions delinquency of $71,039.51.

25.     Spectrum's failure to make required contributions to the Funds during the Remittance Delinquency Period is a breach of the Agreement.

5

26.     Article X § 9(a) of the Agreement requires employers found delinquent in their payment of contributions to the Funds to pay interest on the unpaid amounts at the rate of ten percent (10%) per annum or the rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater.

27.     Article X § 9(a) of the Agreement provides that if the Funds bring an action to recover the interest on delinquent fringe benefit contributions, Spectrum is obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

28.     Article X § 9(b) of the Agreement provides that in the event that formal proceedings to recover unpaid contributions are instituted and the Court renders judgment for the Funds, Spectrum must pay to the Funds: (i) the unpaid contributions; (ii) interest on the unpaid contributions at the rate of 10% per year or the rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater; (iii) liquidated damages in an amount equal to the interest; (iv) reasonable attorneys' fees; and (v) such other legal or equitable relief as the Court deems appropriate.

29.     Accordingly, Spectrum is liable to the Funds for failing to make required fringe benefit and LECET contributions for Covered Work performed by Spectrum employees on the Pearl Street Project during the Remittance Delinquency Period in the principal amount of $71,039.51, plus interest, liquidated damages, attorneys' fees and costs, and such other legal or equitable relief as the Court deems appropriate.

### AS AND FOR A SECOND CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF ERISA OBLIGATIONS)

30.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 29 of this Complaint, as if fully set forth herein.

31.     ERISA § 515 (29 U.S.C. § 1145) requires employers to make contributions in

accordance with the terms and conditions of collective bargaining agreements.

32.     Spectrum is an employer under ERISA and is bound by the Agreement.

33.     During the Remittance Delinquency Period, Spectrum failed to make contributions to the Funds required under the Agreement. Failure to make such payments violates ERISA § 515 (29 U.S.C. § 1145).

34.     Once it is found that an employer has violated ERISA § 515 (29 U.S.C. § 1145), the Court is required by ERISA 502(g)(2) (29 U.S.C. § 1132(g)(2)) to award the Funds: (i) the unpaid contributions; (ii) interest on the unpaid contributions; (iii) an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the Funds' plan; (iv) reasonable attorneys' fees and costs of the action to be paid by defendants; and (v) such other legal and equitable relief as the court deems appropriate. Interest on unpaid contributions shall be determined by using the rate provided under the Funds' plan, or, if none, the rate prescribed under Section 6621 of Title 26 of the United States Code.

35.     Article X § 9(a) of the Agreement provides for interest on delinquent contributions at the rate of ten percent (10%) per annum or the rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater.

36.     Accordingly, Spectrum is liable to the Funds for failing to make required contributions for Covered Work performed by Spectrum employees on the Pearl Street Project during the Remittance Delinquency Period in the principal amount of $71,039.51, plus statutory damages, including interest, liquidated damages, Plaintiffs' attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate pursuant to § 502(g)(2) of ERISA (29 U.S.C. § 1132) and the Agreement.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF CONTRACT FOR FAILURE TO REMIT DUES CHECKOFFS AND NYLPAC CONTRIBUTIONS)

37.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

38.     Article XI §§ 4 and 5 of the Agreement requires Spectrum to deduct and remit to the Funds dues checkoffs and NYLPAC contributions withheld from the wages of employees who perform Covered Work and who authorized such deductions.

39.     During the Remittance Delinquency Period, Spectrum failed to deduct and/or remit $5,640.60 from the wages of its employees who performed Covered Work on the Pearl Street Project and who authorized deductions of dues checkoffs and NYLPAC contributions from their wages.

40.     The Funds, as the duly authorized agent for the Union have duly demanded the dues checkoffs and NYLPAC contributions due and owing from Spectrum for the Remittance Delinquency Period.

41.     Spectrum's failure to deduct and/or remit the dues checkoffs and NYLPAC contributions for the Remittance Delinquency Period is a breach of the Agreement.

42.     Plaintiffs are entitled to prejudgment interest on the unremitted dues checkoffs and NYLPAC contributions at the New York State statutory rate of nine percent (9%) per annum pursuant to New York Civil Practice Law and Rules §§ 5001 and 5004.

43.     Accordingly, Spectrum is liable for undeducted and/or unremitted dues checkoffs and NYLPAC contributions during the Remittance Delinquency Period in the principal amount of $5,640.60, plus interest, and any and all other contractual damages.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (DEMAND FOR AN ORDER DIRECTING SPECTRUM TO PERMIT AN AUDIT OF IT'S BOOKS AND RECORDS)

44.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 43, as if fully set forth herein.

45.     Pursuant to the terms of the Agreement, Spectrum is required to permit and cooperate with the Funds and/or their designated representatives in the conduct of an audit of Spectrum's books and records. Article X § 12(a) of the Agreement states:

> The books and records of the Employer shall be made available at all reasonable times for inspection and audit by the accountants or other representatives of the Funds including, without limitation, all payroll sheets, W-2 forms, New York State Employment Reports, Insurance Company reports and supporting checks, ledgers, general ledger, cash disbursement ledger, vouchers, 1099 forms, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, and any other items concerning payroll(s). In addition, the aforementioned books and records of any affiliate, subsidiary, alter ego, joint venture, successor or related company of the employer shall also be made available at all reasonable times for inspection and audit by accountants or other representatives of the Funds. The Employer shall retain, for a minimum period of six (6) years, payroll and related records necessary for the conduct of a proper audit in order that a duly designated representative of the Trustees may make periodic review to confirm that contributions owed pursuant to this Agreement are paid in full. The Funds shall bear the cost of an inspection and audit, except where the audit discloses a delinquency in excess of 10% of the prior year's contribution or $2,000.00, whichever is greater.

46.     In addition, ERISA requires every employer to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1).

47.     Article X § 12(b) of the Agreement provides that in the event the Funds bring an action to obtain an audit of the Employer's books and records, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

48.     Accordingly, pursuant to the terms of the Agreement, the Funds demand an order

directing Spectrum to permit and cooperate with the Funds and/or their designated representatives in the conduct of an audit of Spectrum's books and records for the period of February 9, 2018 through the present, and for Plaintiffs' reasonable costs and attorneys' fees incurred in bringing this action.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### (CLAIM FOR COST OF THE AUDIT)

49.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 48, as if fully set forth herein.

50.     Pursuant to Article X, Section 12(b) of the Agreement, Spectrum is required to pay the cost of the audit in the event that the audit discloses a delinquency in excess of 10% of the prior year's contributions or $2,000.00, whichever is greater.

51.     Accordingly, Spectrum is obligated to pay the cost of the audit in the event that the requested audit of its books and records discloses a delinquency in excess of 10% of the prior year's contributions or $2,000.00, whichever is greater.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (CLAIM FOR FRINGE BENEFIT AND LECET CONTRIBUTIONS, DUES CHECKOFFS, NYLPAC CONTRIBUTIONS, AND OTHER STATUTORY AND CONTRACTUAL DAMAGES FOUND PURSUANT TO AN AUDIT OF SPECTRUM'S BOOKS AND RECORDS)

52.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 51, as if fully set forth herein.

53.     The Agreement requires Spectrum to pay fringe benefit and LECET contributions, dues checkoffs, and NYLPAC contributions found due and owing pursuant to an audit of its books and records.

54.     Accordingly, Spectrum is liable to Plaintiffs for all unpaid fringe benefit and LECET contributions, dues checkoffs, and NYLPAC contributions found due and owing pursuant

to an audit, plus all statutory and contractual damages, including interest, liquidated damages, audit costs, attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate pursuant to § 502(g)(2) of ERISA (29 U.S.C. § 1132) and the Agreement.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
#### (CLAIM FOR BREACH OF CONTRACT
#### FOR FAILING TO POST A BOND)

55.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 54 of this Complaint, as if fully set forth herein.

56.     Pursuant to Article X, § 10(a) of the Agreement, Spectrum is required, *inter alia*, to post and maintain a bond in the minimum amount of $50,000.00 guaranteeing the payment of all fringe benefit contributions and wage deductions.

57.     Additionally, Article X, § 10(b) of the Agreement provides that in the event an audit of an Employer's books and records reveals a deficiency in the payment of fringe benefit contributions or a failure to deduct or remit dues checkoffs, the Union or the Funds in their sole and absolute discretion may require that the Employer post and maintain a bond in the amount of twice the audited deficiencies within thirty days of receiving notice of such demand from the Union or the Funds.

58.     Upon information and belief, no bond has been posted by Spectrum.

59.     The failure, refusal or neglect of Spectrum to post and maintain the required bond constitutes a breach of the Agreement.

60.     Accordingly, pursuant to Article X §§ 10(a) and 10(b) of the Agreement, Spectrum is required to post and maintain a bond in the minimum of amount of $50,000.00, or in the amount of twice the audited deficiency within 30 days of receiving notice of such demand from the Union or the Funds.

## AS AND FOR A EIGHTH CLAIM FOR RELIEF
### (CLAIM FOR INJUNCTIVE RELIEF)

61.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 60 of this Complaint, as if fully set forth herein.

62.    Pursuant to the terms and conditions of the Agreement, Spectrum is required to timely pay and/or submit fringe benefit and LECET contributions and/or reports to the Funds, to remit to the Union dues checkoffs and NYLPAC contributions deducted from the wages paid to its employees who authorize said deductions, and to permit and cooperate in the conduct of an audit of Spectrum's books and records for so long as Spectrum remains obligated to do so pursuant to the Agreement.

63.    Spectrum has failed to timely pay, submit, and/or remit required fringe benefit and LECET contributions, dues checkoffs, and NYLPAC contributions to the Funds, and are currently in breach of their obligations under the Agreement. Their prior conduct demonstrates a significant likelihood that they will continue to breach the terms of the Agreement.

64.    Plaintiffs have no adequate remedy at law to ensure that Spectrum will adhere to the terms of the Agreement.

65.    Plaintiffs will suffer immediate and irreparable injury unless Spectrum, its officers, agents, servants and employees are enjoined from failing, refusing, or neglecting to pay and/or submit the required monetary contributions and/or reports to the Funds and permit and cooperate in the conduct of an audit for so long as Spectrum remains obligated to do so under the Agreement. The Union will suffer immediate and irreparable injury unless Spectrum, its officers, agents, servants and employees are enjoined from failing, refusing, or neglecting to remit dues checkoffs and NYLPAC contributions deducted from the wages paid to employees who authorize said deductions for so long as it remains obligated to do so.

12

66.     Accordingly, Plaintiffs request this Court issue an injunction permanently enjoining Spectrum, its officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from failing, refusing, or neglecting to pay and/or submit the required contributions and/or reports to the Funds and requiring it to permit and cooperate in the conduct of an audit for the term of the Agreement. The Union requests this Court to issue an injunction permanently enjoining Spectrum, its officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from failing, refusing, or neglecting to remit dues checkoffs and NYLPAC contributions deducted from the wages paid to employees who authorize said deductions for the term of the Agreement.

## AS AND FOR A NINTH CLAIM FOR RELIEF
### (CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO ERISA)

67.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 66 of this Complaint, as if fully set for the herein.

68.     Pursuant to ERISA and the Agreement, Spectrum is required to timely pay, submit and/or remit fringe benefit and LECET contributions and/or reports to the Funds, and permit and cooperate in the conduct of audits of Spectrum's books and records for so long as it remains obligated to do so pursuant to the Agreement.

69.     Spectrum has failed to timely pay, submit, and/or remit required fringe benefit and LECET contributions to the Funds, and are currently in breach of their obligations under ERISA. Their prior conduct demonstrates a significant likelihood that they will continue to breach ERISA.

70.     The Plaintiffs have no adequate remedy at law to ensure that Spectrum will continue to adhere to its statutory obligations.

71.     Plaintiffs will suffer immediate and irreparable injury unless Spectrum, its officers,

agents, servants and employees are enjoined from failing, refusing, or neglecting to pay and/or

submit the required monetary contributions and/or reports to the Funds and permit and cooperate

in the conduct of an audit of Spectrum's books and records for so long as Spectrum remains

obligated to do so pursuant to ERISA.

72.     Accordingly, Plaintiffs request this Court to issue an injunction permanently

enjoining Spectrum, its officers, agents, servants, employees and all persons in active concert or

participation with them who receive actual notice of the order by personal service or otherwise

from violating ERISA by failing, refusing, or neglecting to pay and/or submit the required

contributions and/or reports to the Funds, and requiring it to permit and cooperate in the conduct

of an audit of Spectrum's books and records for the term of the Agreement.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Spectrum:

a)      for payment of delinquent fringe benefit and LECET contributions in the principal amount of $71,039.51 for the time period of February 9, 2018 through June 10, 2018;

b)      for payment of all required dues checkoffs and NYLPAC contributions in the principal amount of $5,640.60 for the time period of February 9, 2018 through June 10, 2018;

c)      for interest on delinquent fringe benefit and LECET contributions for the time period of February 9, 2018 through June 10, 2018 from the time such contributions were due at the rate of 10% per annum or the rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater;

d)      for liquidated damages on the delinquent fringe benefit and LECET contributions for the time period of February 9, 2018 through June 10, 2018;

e)      for interest on unpaid dues checkoffs and NYLPAC contributions for the time period of February 9, 2018 through June 10, 2018 at the rate set by C.P.L.R. § 5004;

f)      for Plaintiffs' costs and attorneys' fees;

14

g)     for all ERISA damages pursuant to 29 U.S.C. § 1132(g);

h)     for an Order directing Spectrum to cooperate with the Funds in an audit of its books and records for the time period of February 9, 2018 through the present;

i)     for an Order requiring payment of all fringe benefit and LECET contributions, dues checkoffs, and NYLPAC contributions and all statutory and contractual damages found due and owing pursuant to an audit for the time period of February 9, 2018 through the present;

j)     for interest on all dues checkoffs, and NYLPAC contributions found due and owing for the period of the audit at the rate set by C.P.L.R. § 5004;

k)     for all statutory damages on all fringe benefit and LECET contributions found due and owing for the period of the audit, including but not limited to interest, liquidated damages, reasonable attorney's fees and costs, and such other legal and equitable relief as the Court deems appropriate in accordance with ERISA § 502(g)(2) and the Agreement;

l)     for the cost of the audit in the event that the audit discloses a delinquency in excess of 10% of the prior year's contributions or $2,000.00, whichever is greater;

m)     for an Order requiring Spectrum to post and maintain a bond;

n)     for an Order requiring Spectrum and its officers, agents, servants, employees and all persons in active concert or participation with it who receive actual notice of the order, by personal service or otherwise, for so long as it remains obligated to contribute to the Funds and the Union, from failing, refusing or neglecting to pay and/or submit to Plaintiffs the required monetary contributions, dues checkoffs and NYLPAC contributions, and to permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to the Agreement;

o)     for an Order requiring Spectrum and its officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order, by personal service or otherwise, for so long as it remains obligated to contribute to the Funds, from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions, and to permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to ERISA; and

p)     for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 18, 2018

                                    GORLICK, KRAVITZ & LISTHAUS, P.C.
                                    *Attorneys for Plaintiffs*

                                    By: _____
                                         Bruce L. Listhaus
                                         Joy K. Mele
                                         17 State Street, 4th Floor
                                         New York, New York 10004
                                         blisthaus@gkllaw.com
                                         jmele@gkllaw.com
                                         Tel. (212) 269-2500
                                         Fax (212) 269-2540